JOSEPH PECHAVAR v. OLIVER IRON MINING COMPANY.[1]

No. 30,708.

March 6, 1936.

*Austin & Wangensteen,* for relator.
*Dennis F. Donovan,* for respondent.

STONE, JUSTICE.

*Certiorari* to the industrial commission to review an order denying workmen's compensation.

The accident for which relator claims compensation occurred April 12, 1930. Seemingly trivial, it was reported by the employer to the industrial commission as a "non-disabling accident" June 6, 1930. Soon, however, more serious trouble developed. Relator's present claim is that as result of the accident he is now blind in the right eye. He did not file his "claim petition" until April 19, 1933, three years after the accident.

The argument that compensation is now barred by 1 Mason Minn. St. 1927, § 4282 (providing that proceedings to recover compensation must be begun within two years after the employer has made written report of the injury to the commission), has been resolved for the employe by Pease v. Minnesota Steel Co. 196 Minn. 552, 265 N. W. 427, 266 N. W. 854.

The accident occurred while relator, a miner, was drilling with a jackhammer or hand drill operated by compressed air. A small

[1]Reported in 265 N. W. 429, 266 N. W. 854.

particle of iron ore was blown through the drill into his eye. His own efforts and those of a fellow employe to remove it being unsuccessful, relator left his work and went to the dryhouse, where he attempted to wash it out. He testified that while he was in the dryhouse, "One fellow come there and take that thing, the water, and run the shower, and from his hands drop lots of dirt in both eyes when water wash from hands." Later the same day Dr. McCarty, not a "company doctor," removed "a small foreign body" from the cornea. There was no bleeding. The eye was inflamed, but there was no evidence of infection.

The following day relator went to the Shipman Hospital, where a company doctor, Dr. Sutherland, removed another small particle. He treated the eye again April 14 and 19 and on May 2. On May 3 and 4 another company doctor, Dr. Ayers, attended relator. He "curetted an ulcer and applied a solution of silver." The ulcer was at the exact site from which the foreign particle had been removed.

The record does not show that relator received any further medical attention until December 7, 1932. He was then examined by Dr. John A. Winter, an eye specialist. March 16 and September 25, 1933, he was examined by another specialist, Dr. M. H. Gillespie. Further discussion of the medical testimony will appear later.

Relator's testimony is uncontradicted that he had normal vision in both eyes up to the time of the accident and that from the moment of the accident the vision of his right eye was impaired and from then on gradually diminished until, at the end of six months, it was completely gone. The medical testimony establishes conclusively that the immediate cause of blindness was thrombosis of the retinal veins resulting from the ulcer.

Whether the ulcer was caused by the accident is left in apparent rather than real doubt. The unanimous opinion of the doctors was that, while it might be possible for an ulcer to result from an accident such as that in question, it would be extremely unlikely, in fact practically unheard of, for it to happen unless the eye were also infected. There is no evidence that before the accident relator had any disease capable of producing such an ulcer. His own undisputed testimony is that he had worked for respondent stead-

ily since 1911 without losing a single day on account of sickness. Relator had been thoroughly examined and given blood tests to ascertain if he had any disease capable of producing such an ulcer. "All these tests were entirely negative."

The ulcer having occurred at the exact site of the injury and there being no suggestion of other source of infection, it is difficult to see how any other conclusion is tenable than that the infection causing the ulcer, which finally brought blindness, entered the eye at the same point. The one remaining question is whether the infection was introduced at the same time as, and by means of, the particle of ore, or whether it was subsequently introduced by some other agency.

One thing is certain. The injury opened the door to infection. If the latter were introduced through the portal so made and in the course of treatment, the resulting disability would still be chargeable under the compensation law to the accident. Treating the original injury and the subsequent infection as separate factors of causation does not get us away from the rather obvious conclusion that they are but links in a chain of connected events, the beginning of which was in the injury and the end in the loss of vision in the damaged eye.

Being unable to view the facts otherwise than as above indicated, we cannot escape the conclusion that the finding on the merits, of a lack of causal connection between the injury and the disability, is so palpably against the greater weight of the evidence that there must be a reversal of the order denying compensation, without prejudice, however, to any application or order for a rehearing that may be made to or by the industrial commission.

Attorney's fees in the sum of $75 are allowed to relator.

It is so ordered.

UPON APPLICATION FOR REARGUMENT.

On May 8, 1936, the following opinion was filed:

STONE, JUSTICE.

The petition of respondent for a rehearing is denied.

The record, particularly the testimony of Dr. Winter, a witness for respondent, has been reëxamined. The petition for rehearing is based in the main upon a part of his testimony. The whole of it is of such a nature, however, that, in our judgment, it did not tend appreciably to overcome the inferences which appeared to us as inescapable on the rest of the record.

But because, particularly in this field of medical opinion evidence, the decision of the industrial commission is highly important, we did not foreclose their further consideration of the matter. New evidence may be available. Whether it is or not, if the case is reconsidered by the commission, they will make their own decision of the issues, independently of anything we have said, with full opportunity to point out the reasons for their conclusion, whether it agrees or disagrees with our opinion.